Argued and submitted June 23, 1986, reversed as to attorney fees and remanded with instructions to delete the award; otherwise affirmed April 8, Fireman's Fund's reconsideration and ABCD...Vision's reconsideration denied May 22, both petitions for review allowed June 16, 1987 (303 Or 534)

ABCD...VISION, INC. et al,
*Respondents,*

*v.*

FIREMAN'S FUND
INSURANCE COMPANIES,
*Appellant.*

(A8305-03055; CA A34760)

734 P2d 1376

I. Franklin Hunsaker, Portland, argued the cause for appellant. With him on the briefs were Douglas Houser, Dianne K. Ericsson and Bullivant, Houser, Bailey, Hanna, Pendergrass, Hoffman, O'Connell & Goyak, Portland.

Susan P. Graber, Portland, argued the cause for respondents. With her on the brief were George F. Hammond and Stoel, Rives, Boley, Fraser & Wyse, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

### NEWMAN, J.

Defendant appeals a declaratory judgment that an insurance policy that it issued to plaintiff ABCD...VISION, INC., covers damage to plaintiffs' television transmission system. It also appeals from an order awarding attorney fees to plaintiffs. We reverse the award of attorney fees, but otherwise affirm.

Plaintiffs operated a television transmitter in Silverton.[1] It was insured by defendant. The policy provides:

"PERILS INSURED.
"This policy insures against all risks of direct physical loss of or damage to the property insured from any external cause except as otherwise provided herein.

"PERILS EXCLUDED.
"This policy does not insure against:

"a.   Loss or damage which is due and confined to wear and tear, inherent vice, gradual deterioration, insects, vermin, freezing, dampness of atmosphere, extremes of temperature, mechanical or electrical breakdown or failure, unless such damage is the result of other loss covered by this policy.

"* * * * *

"g.   Loss, damage, or expense directly due to or resulting from repairing, adjusting, servicing or maintenance operation, unless fire or explosion ensues, and then only for direct loss or damage caused by such ensuing fire or explosion.

"* * * * *

"CONDITION 14.
"In case of loss, it shall be lawful and necessary for the insured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof without prejudice to this insurance nor shall the acts of the Insured or the Company, in recovering, saving and preserving the property insured in case of loss be considered a waiver or an acceptance of abandonment. The expenses so incurred shall be borne by the Insured and the Company proportionately to the extent of their respective interests."

---

[1] We review the evidence in the light most favorable to plaintiffs. *Jacobs v. Tidewater Barge Lines,* 277 Or 809, 562 P2d 545 (1977).

The transmission system consisted of several interrelated components[2] made of materials subject to fire, arcing, smoke and soot. It included a Visual Standing Wave Ratio protection system (VSWR) to detect malfunctions and to turn the system off automatically. Shortly after plaintiffs began to transmit morning programs on May 22, 1982, arcing, fire, smoke and soot damaged components of the transmission system, and it stopped functioning. Plaintiffs discovered that, because of a defective thermal relay, the VSWR had not turned off the system soon enough to avoid damage. Plaintiffs made repairs that were feasible and replaced some of the damaged equipment with spare parts. They removed a defective relay in the VSWR, but neither a new relay nor a replacement VSWR was immediately available and they resumed broadcasting without a functioning VSWR. They received a replacement relay some days later but did not install it. On June 3, 1982, the transmission system arced and overheated for two minutes. Plaintiffs shut it down manually. Components of the transmission system that had not been damaged on May 22 were damaged on June 3.

Plaintiffs made a claim for all the damages from both incidents. After investigation, defendant denied the claim on the ground that its policy only covers damage resulting from "external causes" and that plaintiffs had not shown that the arcing, smoke and soot came from any "external cause." Relying on Condition 14, it denied the claim for the June 3 damage on the additional ground that plaintiffs had failed to safeguard all of the insured property after the May 22 damage. Defendant did not mention or rely on either of the exclusions in clauses (a) and (g). Plaintiffs and defendant then agreed to delay an appraisal of the damages until after litigation about coverage, and plaintiffs brought this action.

The trial court ruled that (1) the term "external cause" is ambiguous and the parties could offer extrinsic evidence of their intent; (2) defendant could not introduce evidence of another policy that might have covered the damage if plaintiffs had purchased it; and (3) defendant was estopped to

---

[2] The components included "aural Klystrons" (vacuum tubes which amplify the television signal), "harmonic filters" (to screen out portions of respondent's audio signal which intrude upon other stations' frequencies) and a "diplexer" and "output combiner" (to merge audio and visual signals and transmit them to the antenna).

assert defenses based on exclusion clauses (a) and (g).[3] At trial, the court refused defendant's request to instruct the jury that an "external cause" is one "which operates from the outside" and that any damage resulting from plaintiffs' negligence or deliberate risk-taking is not an "external cause" and is not covered by the insurance policy. Defendant excepted to the court's instruction that damage caused by negligence is a fortuitous event and is covered by the policy unless expressly excluded and that the risk of negligence "by the insured * * * is an insured peril." Defendant also excepted the court's instruction that Condition 14 means that:

> "the insured must take steps to preserve the damaged property if it continues to have a recoverable value. And if the insureds [sic] fails to do so, it will be a breach to the insurance contract to the degree of damage, if any, on the second incident of June 3, 1982."

Defendant further excepted to the court's refusal to give a requested instruction of defendant, with respect to Condition 14, that omitted the language just quoted and stated that:

> "[t]he insured's [*sic*] breach] of * * * [Condition 14] may keep the insureds [*sic*] from recovering under the policy if the insured's [*sic*] failure to satisfy the condition increased the loss."

The court also denied defendant's motion for a directed verdict.

In a special verdict, the jury found: (1) arcing, fire, smoke or soot caused the damage to the insured property on both May 22 and June 3 and was "a cause external to the property insured;" (2) following the occurrence of May 22 the plaintiffs did not take reasonable steps to recover, save and preserve the *insured* property, but did take reasonable steps to recover, save and preserve the *damaged* property. The court

---

[3] In its answer to plaintiffs' fourth amended complaint, defendant alleged:

"5. Arcing, fire, smoke and soot, as alleged by Plaintiffs in Paragraph VII are perils otherwise excluded since, if arcing, fire, smoke and soot occurred, which Defendant specifically denies, said arcing, fire, smoke and soot were due to mechanical breakdown or failure of Plaintiffs' equipment.

"6. Arcing, smoke and soot, as alleged by Plaintiffs in Paragraph VII are perils otherwise excluded since if arcing, smoke and soot occurred, which Defendant specifically denies, said arcing, smoke and soot were directly due to and resulted from repairing, adjusting, servicing or maintenance operations of Plaintiffs."

then granted declaratory judgment for plaintiffs and denied defendant's motion for judgment *n.o.v.*

Five of defendant's assignments of error concern the same issue: whether the term "external cause" is ambiguous. As the court stated in *Timberline Equipment v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 643, 576 P2d 1244 (1978):

> "As a general rule the construction of a contract, including an insurance contract, is a question of law. The exception to this rule is that if the language of the contract is ambiguous, or if technical words, local phrases or terms of art are used and evidence is properly admitted showing meaning, the question becomes one of fact." (Citation omitted.)

Defendant argues that the words "external cause" are not ambiguous and that the court should not have admitted extrinsic evidence of the parties' intent or allowed the jury to determine the meaning of that term. It urges that "external cause" means a cause "arising or acting from outside," that is, "having an outside origin." It asserts that plaintiffs' losses resulted from an internal cause and also from plaintiffs' own negligence or deliberate risk-taking. Plaintiffs respond that an "external cause" can also mean one which is accidental or fortuitous.

The test of ambiguity is whether a contract provision "has no definite significance or if it is capable of more than one sensible and reasonable interpretation; it is unambiguous if its meaning is so clear as to preclude doubt by a reasonable person." *Deerfield Commodities v. Nerco, Inc.*, 72 Or App 305, 317, 696 P2d 1096, *rev den* 299 Or 314 (1985). If a contract is ambiguous, the court may admit extrinsic evidence of the parties' intent, and that question becomes one of fact. *Deerfield Commodities v. Nerco, Inc., supra,* 72 Or App at 317. In *Goodman v. Fireman's Fund Ins. Co.*, 600 F2d 1040 (4th Cir 1979), the court construed a clause, similar to that in defendant's policy, in a policy which covered a yacht which sank due to its owner's negligence. The court stated:

> "The addition of the phrase 'external cause' to the 'all risks' clause constitutes no real limitation on the scope of the latter. If the loss did not result from inherent defect, ordinary wear and tear, or intentional misconduct, its cause was necessarily external." 600 F2d at 1042.

Other courts have held that an accidental or fortuitous event,

regardless of its place of origin, constitutes an "external cause." *See Morrison Grain Co., Inc. v. Utica Mut. Ins. Co.,* 632 F2d 424, 430 (5th Cir 1980); *Atlantic Lines Ltd. v. American Motorists Ins. Co.,* 547 F2d 11, 12 (2d Cir 1976); *see also Kraemer Bros., Inc. v. U.S. Fire Ins. Co.,* 89 Wis 2d 555, 278 NW2d 857 (1979). We conclude that the phrase "external cause" does not unambiguously mean only a cause "arising outside the physical boundaries of the insured property." It may also mean a "fortuitous event."

Other language of the policy supports the view that "external cause" may encompass fortuitous events originating within the insured property. Subsection "a" under *Perils Excluded* excludes coverage for damage caused by "mechanical or electrical breakdown or failure." If the policy covered only losses from causes originating outside the insured property, then it would not also be necessary expressly to exclude those causes. The court did not err in holding that the term "external cause" is ambiguous.

■     For the reasons discussed above, the court also correctly refused to instruct the jury that an external cause is "one arising or acting from the outside." Moreover, it did not err in instructing the jury that damage caused by plaintiffs' own negligence is an insured risk and, therefore, covered under the policy. *See Goodman v. Fireman's Fund Ins. Co., supra,* 600 F2d at 1042; *Atlantic Lines Ltd. v. American Motorists Ins. Co.,* 547 F2d 11 (2d Cir 1976); *Northwestern Mutual Life Insurance Co. v. Linard,* 498 F2d 556, 561 (2d Cir 1974); *C. H. Leavell & Co. v. Fireman's Fund Insurance Co.,* 372 F2d 784, 789 (9th Cir 1967); *General American Transp. Corp. v. Sun Insurance Office, Ltd.,* 369 F2d 906, 908 (6th Cir 1966); *Dubuque Fire and Marine Insurance Co. v. Caylor,* 249 F2d 162, 164 (10th Cir 1957); *Redna Marine Corporation v. Poland,* 46 FRD 81, 87 (SDNY 1969); *Associated Engineers, Inc. v. American Nat. Fire Ins. Co.,* 175 F Supp 352, 353 (ND Cal 1959); *Avis v. Hartford Fire Insurance Company,* 283 NC 142, 195 SE2d 545 (1973).

■     The court did not abuse its discretion when it refused to admit testimony concerning an insurance policy that the parties did not execute. The testimony's potential for prejudice and confusion sustantially outweighed its probative value. *See* OEC 403.

■ The court correctly denied defendant's motions for a directed verdict and for judgment notwithstanding the verdict. Although an unknown originating cause may have resulted in the arcing, fire, smoke and soot, there was substantial evidence to support the jury's verdict that arcing, fire, smoke and soot caused the damage in both incidents and were causes external to the property insured. Defendant argues that plaintiffs must prove an "ensuing fire" to recover under the policy. The issue of an "ensuing fire" applies only if exclusion (g) under *Perils Excluded* applies, but, as we hold below, defendant is estopped to raise that exclusion. Moreover, the jury could find from the evidence that arcing, smoke and soot, as well as fire, were responsible for damage to the transmission system.

■ The court, contrary to defendant's position, correctly interpreted Condition 14 to require plaintiff, in case a loss has occurred, to safeguard only the damaged property and not all of the insured property. Defendant's exception to the court's instruction lacks merit. The court also correctly refused to give defendant's requested instruction.

■ The court did not err in ruling that defendant was estopped from asserting defenses based on exclusions (a) and (g). Defendant first pleaded those defenses in its answer to plaintiffs' fourth amended complaint. Previously, defendant had denied coverage on other grounds after conducting an investigation of the losses. Defendant asserts that it is not estopped, because (1) plaintiffs did not detrimentally rely upon defendant's failure to assert the exclusions earlier and (2) estoppel cannot expand coverage beyond the limits of the original policy. We disagree with defendant's first point and find its second point inapplicable.

In *Ward v. Queen City Ins. Co.*, 69 Or 347, 128 P 1067 (1914), the insured argued that the insurer was estopped from asserting a defense of false swearing in the proof of loss, because the defendant, with full knowledge of the facts surrounding the fire loss, notified the plaintiff that it was denying liability because the plaintiff had stored gasoline in the insured building. The plaintiff, relying on the defendant's statement, employed attorneys and filed the action. The court stated:

"After the lapse of some months subsequent to the fire, defendant expressed its declination to meet the terms of the contract of insurance upon the sole ground that certain acts of the plaintiff had increased the hazard of its risk. Accepting this position of defendant's as the battleground, plaintiff employed counsel and initiated this action. By this conduct, defendant led plaintiff to believe that there was but one reason for its denial of liability; consequently, under such circumstances, defendant should not be permitted to screen itself from liability on grounds other than the one specified in the letter indited by its legal representative, provided defendant * * * was in possession of the material which it now claims exculpates it from liability. 'Every consideration of public policy demands that insurance companies should be required to deal with their customers with entire fairness and frankness. They may refuse to pay without specifying any ground, and insist upon any available ground, but, when they plant themselves upon a separate defense and so notify the insured, they should not be permitted to retract if the latter has acted upon their position as announced, and incurred expenses in consequence of it,' said Mr. Chief Justice Church, speaking for the Court of Appeals in *Brink v. Insurance Co.,* 80 N.Y. 108, and quoted with approval in *McCormick v. Insurance Co.,* 163 Pa. 193 (29 Atl. 747).

"* * * * *

"[W]hen defendant decided to deny liability to plaintiff, good faith required that it should apprise plaintiff fully of its position, and, failing to do this, we think defendant is estopped from asserting any defense, other than that brought to the notice of plaintiff." 69 Or at 352.

Here, plaintiffs prepared and filed their action on the basis of defendant's denial letter. *Wyoming Sawmills v. Transportation Ins. Co.,* 282 Or 401, 570 P2d 1253 (1978), which defendant cites for the proposition that plaintiffs may not invoke estoppel to expand coverage, is not in point. There, the insurer denied coverage before the action was filed on the basis of an exclusion in the policy but argued at trial that there was no coverage under the insuring clause. The court held that the defendant was not estopped and distinguished *Ward v. Queen City Ins. Co., supra:*

"No distinction was made in *Ward* between failure to assert that the claim falls within the *insuring clause* originally granting coverage as compared with a failure to assert an *exclusion* from the original grant of coverage. *It seems obvious*

*that the rule must be limited to failure to assert the exclusion.* Waiver or estoppel cannot be the basis for creating an original grant of coverage where no such contract previously existed. * * * It is our conclusion that defendant is not estopped from contending nor has it waived the right to contend that plaintiff's loss did not result from property damage as covered by the policy." 282 Or at 410. (Final emphasis supplied.)

Here, defendant failed timely to assert the exclusions from coverage. *Ward* is in point. Defendant was estopped to assert the defenses based on exclusions (a) and (g), and *Wyoming Sawmills* is *not* to the contrary.

■ Defendant's final assignment of error is that the court erred in awarding plaintiffs attorney fees. We agree. Plaintiffs sought declaratory relief and did not recover a money judgment. ORS 743.114 provides:

"If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

Nonetheless, plaintiffs argue that they are entitled to attorney fees, because, as a result of the declaratory judgment, their recovery is inevitable. In *McGraw v. Gwinner,* 282 Or 393, 578 P2d 1250 (1978), the court stated:

"We adhere to the proposition that in order to secure attorney fees pursuant to ORS 743.114, the insured must recover a money judgment against the insurer; it is not sufficient that the insured establish coverage which may in turn lead to a subsequent recovery of money. * * * That * * * is clearly a requirement of the statute. ORS 743.114 provides that an insured has a right to attorney fees when he can establish that 'the plaintiff's recovery exceeds the amount of any tender made by defendant in such action * * *.'

"If the claim of the insured has not progressed to the stage where the insured can request and secure a money judgment against the insurer, the legislature did not contemplate that attorney fees were awardable."

Plaintiffs were not entitled to an award of attorney fees under ORS 743.114 at the time the court entered its order.

Reversed as to attorney fees and remanded with instructions to delete the award; otherwise affirmed.