Argued and submitted July 7, decisions of Court of Appeals and trial court reversed in part and remanded to trial court for further proceedings November 3, 1987

ABCD...VISION, INC.,
*Petitioner/Respondent on Review,*

*v.*

FIREMAN'S FUND
INSURANCE COMPANIES,
*Respondent/Petitioner on Review.*

(CC A8305-03055; CA A34760; SC S33 950, S34004)

744 P2d 998

Susan P. Graber, Portland, argued the cause for petitioner/

respondent on review. With her on the petition were Barnes H. Ellis and Stoel, Rives, Boley, Fraser & Wyse, Portland.

I. Franklin Hunsaker, Portland, argued the cause for respondent/petitioner on review. With him on the petition were Douglas G. Houser, Dianne K. Ericsson and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

Before Peterson, Chief Justice, and Linde, Campbell, Carson and Jones, Justices.

JONES, J.

## JONES, J.

Defendant insurer, Fireman's Fund Insurance Companies, petitioned this court to review the decision of the Court of Appeals, which affirmed a declaratory judgment of the trial court holding that insurer was liable under an insurance policy for damages sustained to the property of the insured plaintiff, ABCD...Vision, Inc. *ABCD...Vision, Inc. v. Fireman's Fund Ins. Companies,* 84 Or App 645, 734 P2d 1376 (1987). We allowed review to decide the issue whether the insurer was estopped from asserting two policy exclusions as defenses to the claimed damages of the insured because insurer had failed to assert those policy exclusions as the basis of its denial of the claim in its original denial letter to the insured.

The parties agree to the facts set out in the Court of Appeals opinion.

"Plaintiffs operated a television transmitter in Silverton. It was insured by defendant. The policy provides:

'PERILS INSURED.
'This policy insures against all risks of direct physical loss of or damage to the property insured from any external cause except as otherwise provided herein.

'PERILS EXCLUDED.
'This policy does not insure against:

'a.  Loss or damage which is due and confined to wear and tear, inherent vice, gradual deterioration, insects, vermin, freezing, dampness of atmosphere, extremes of temperature, mechanical or electrical breakdown or failure, unless such damage is the result of other loss covered by this policy.

'* * * * *

'g.  Loss, damage, or expense directly due to or resulting from repairing, adjusting, servicing or maintenance operation, unless fire or explosion ensues, and then only for direct loss or damage caused by such ensuing fire or explosion.

'* * * * *

'CONDITION 14.
'In case of loss, it shall be lawful and necessary for the insured, his or their factors, servants and assigns, to sue,

labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, or any part thereof without prejudice to this insurance nor shall the acts of the Insured or the Company, in recovering, saving and preserving the property insured in case of loss be considered a waiver or an acceptance of abandonment. The expense so incurred shall be borne by the Insured and the Company proportionately to the extent of their respective interests.'

"The transmission system consisted of several interrelated components made of materials subject to fire, arcing, smoke and soot. It included a Visual Standing Wave Ratio protection system (VSWR) to detect malfunctions and to turn the system off automatically. Shortly after plaintiffs began to transmit morning programs on May 22, 1982, arcing, fire, smoke and soot damaged components of the transmission system, and it stopped functioning. Plaintiffs discovered that, because of a defective thermal relay, the VSWR had not turned off the system soon enough to avoid damage. Plaintiffs made repairs that were feasible and replaced some of the damaged equipment with spare parts. They removed a defective relay in the VSWR, but neither a new relay nor a replacement VSWR was immediately available and they resumed broadcasting without a functioning VSWR. They received a replacement relay some days later but did not install it. On June 3, 1982, the transmission system arced and overheated for two minutes. Plaintiffs shut it down manually. Components of the transmission system that had not been damaged on May 22 were damaged on June 3.

"Plaintiffs made a claim for all the damages from both incidents. After investigation, defendant denied the claim on the ground that its policy only covers damage resulting from 'external causes' and that plaintiffs had not shown that the arcing, smoke and soot came from any 'external cause.' Relying on Condition 14, it denied the claim for the June 3 damage on the additional ground that plaintiffs had failed to safeguard all of the insured property after the May 22 damage. Defendant did not mention or rely on either of the exclusion clauses (a) and (g). Plaintiffs and defendant then agreed to delay an appraisal of the damages until after litigation about coverage, and plaintiffs brought this action." 84 Or App at 647-48 (footnotes omitted).

The trial court ruled, among other things, that the insurer was estopped to assert defenses based on exclusion clauses (a) and (g). Insurer first pleaded those defenses in its

answer to the insured's fourth amended complaint. In a special verdict, the jury found that arcing, fire, smoke or soot caused the damage to the insured property on both May 22 and June 3 and was "a cause external to the property insured." The jury did not consider application of the exclusion clauses. The court then granted declaratory judgment for the insured and denied insurer's motion for judgment *n.o.v.*

The Court of Appeals held that the trial court did not err in ruling that the insurer was estopped from asserting defenses based on exclusions (a) and (g). The Court of Appeals also held that the trial court correctly interpreted Condition 14 to require the insured, in case a loss occurred, to safeguard only the damaged property and not all the insured property.

As mentioned, the insurer had denied coverage on other grounds after conducting an investigation of the losses. The insurer argued that it was not estopped because estoppel cannot expand coverage beyond the limits of the original policy. The Court of Appeals rejected the assertion, citing *Ward v. Queen City Ins. Co.*, 69 Or 347, 128 P 1067 (1914). In that case, the insured claimed that the insurer was estopped from asserting a defense of false swearing in the proof of loss, because the insurer, with full knowledge of the facts surrounding the fire loss, notified the insured that it was denying liability because the insured had stored gasoline in the insured building. The insured, relying on the insurer's statement, employed attorneys and filed the action. The *Ward* court stated:

> "* * * After the lapse of some months subsequent to the fire, defendant expressed its declination to meet the terms of the contract of insurance upon the sole ground that certain acts of the plaintiff had increased the hazard of its risk. Accepting this position of defendant's as the battleground, plaintiff employed counsel and initiated this action. By this conduct, defendant led plaintiff to believe that there was but one reason for its denial of liability; consequently, under such circumstances, defendant should not be permitted to screen itself from liability on grounds other than the one specified in the letter indited by its legal representative, provided defendant * * * was in possession of the material which it now claims exculpates it from liability. 'Every consideration of public policy demands that insurance companies should be required to deal with their customers with entire fairness and frankness. They may refuse to pay without specifying any

ground, and insist upon any available ground, but, when they plant themselves upon a separate defense and so notify the insured, they should not be permitted to retract if the latter has acted upon their position as announced, and incurred expenses in consequence of it,' said Mr. Chief Justice Church, speaking for the Court of Appeals in *Brink v. Insurance Co.,* 80 N.Y. 108, and quoted with approval in *McCormick v. Insurance Co.,* 163 Pa. 193 (29 Atl. 747).

"* * * * *

"* * * [W]hen defendant decided to deny liability to plaintiff, good faith required that it should apprise plaintiff fully of its position, and, failing to do this, we think defendant is estopped from asserting any defense, other than that brought to the notice of plaintiff. * * *" 69 Or at 352-54.

The Court of Appeals misapplied this court's decision in *Ward* because, in doing so, it ignored the distinction between the applicability of estoppel to conditions of forfeiture and its applicability to exclusions relating to the scope of coverage.

In *Ward* the insurance company's defenses at trial were: "(1) That the fire was incendiary in its origin; (2) false swearing with respect to making of the proof of loss; (3) that defendant's liability, if at all, is modified by reason of concurrent insurance," 69 Or at 349, whereas the insurance company's denial of responsibility was because the insured stored gasoline on the premises. *Ward* was correct as far as defense (2) was concerned, for the act of false swearing with respect to making the proof of loss was an act of forfeiture by the insured. The insured in *Ward* claimed that the insurance company should be estopped from asserting that the insured made a false statement with respect to the proof of loss, because after investigation the insurance company denied coverage solely because of an increased hazard. For the reasons previously quoted, the court held that the insurer was estopped from claiming the insured forfeited coverage by making false statements. In *Ward* the insured never claimed estoppel as to the scope of coverage under defenses (1) that the fire was incendiary in its origin or (3) that the insurer's liability, if at all, was modified by reason of concurrent insurance.

■■ The Court of Appeals applied *Ward* beyond its holding. *Ward* governs part of the present case, but not the perils excluded in clauses (a) and (g) of the policy. In this case, the

perils excluded under clauses (a) and (g) of the policy are not exclusions of forfeiture, but are exclusions of coverage. When an insurer's assertion of policy defenses is challenged by claiming that policy exclusions have been lost through estoppel, the correct procedure is to determine first whether the provisions upon which the insurer relies are conditions of forfeiture that are subject to estoppel or, instead, are matters relating to the scope of coverage. Estoppel cannot be invoked to expand insurance coverage or the scope of an insurance contract. *See Schaffer v. Mill Owners Ins. Co.*, 242 Or 150, 156, 407 P2d 614 (1965); *see also Reserve Life Ins. Co. v. Howell*, 225 Or 71, 357 P2d 400 (1960); *Ins. Co. of North America v. Atlantic Nat'l Ins. Co.*, 329 F2d 769 (4th Cir 1964); *Simmons v. Civil Service Employees Ins. Co.*, 57 Cal 2d 381, 369 P2d 262 (1962); *Seaford v. Nationwide Mut. Ins. Co.*, 253 NC 719, 177 SE2d 733, 85 ALR2d 496 (1961).

When there is forfeiture of coverage being effected, there is insurance coverage for the loss in the first place, but acts of the insured nullify the coverage, such as the filing of a false statement of loss in *Ward.* Here, there never was coverage under provision (a) of the policy for "mechanical or electrical breakdown or failure" of the insured property. Under provision (a) these perils were outside the scope of the coverage. Further, under provision (g) there never was coverage for "[l]oss, damage * * * resulting from repairing, adjusting, servicing or maintenance operation" of the insured. Nothing in the estoppel doctrine of *Ward* prevents the insurer from adding these additional defenses against coverage of this loss.

On the other hand, Condition 14 appears to be a condition of forfeiture. In essence, that condition provides that if the insured fails to preserve and protect the property, the cost of any loss caused by such failure of the insured to act will not be reimbursed. As mentioned, estoppel cannot be used by the insured to increase the insurer's risk beyond the terms of the policy, but timely disclosure of the reasons for denying a claim can estop the insurer from subsequently denying a claim on other grounds.

In this case, the trial court should have allowed the insurer the opportunity to prove that there never was coverage for the insured's loss under provisions (a) and (g). For the reasons set out by the court in *Ward,* the trial court correctly

ruled that the insurer was estopped to assert a violation of Condition 14.

We reverse the decision of the Court of Appeals in part and remand the case to the trial court for further proceedings consistent with this opinion.