Argued and submitted December 2, 2004, affirmed on petition and cross-petition March 2, petition for review denied June 21, 2005 (338 Or 680)

In the Matter of the Compensation of
John J. Mulrooney, Claimant.

US BANCORP,
*Petitioner - Cross-Respondent,*

*v.*

John J. MULROONEY,
*Respondent - Cross-Petitioner,*

*and*

SAIF CORPORATION
and Bula Arveson,
*Respondents.*

01-09466, 01-08222; A122702

107 P3d 673

David L. Johnstone argued the cause for petitioner - cross-respondent. With him on the briefs was VavRosky MacColl Olson P.C.

George J. Wall and Welch, Bruun & Green filed the briefs for respondent - cross-petitioner.

Jerome P. Larkin argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Schuman, Judge, and Leeson, Judge pro tempore.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner US Bancorp seeks review of an order of the Workers' Compensation Board (the board) setting aside petitioner's denial, and reinstating SAIF Corporation's (SAIF) denial, of claimant's compensable injury. Claimant cross-petitions for review of the board's denial of attorney fees. As described below, we sustain the board's determination that, at the time of his injury, claimant was not employed by SAIF"s insured. Accordingly, we affirm on the petition for review. Because claimant's alleged entitlement to attorney fees is without merit, we affirm on the cross-petition without further discussion.

The pertinent facts are largely undisputed. In the early 1990s, Bula Arveson established the Bula Buck Arveson Trust to assist in the management of her affairs, *see* ORS 128.009(1), (3)(x), and to administer and distribute her estate after her death. Arveson was both the trustor and the initial trustee and, in a subsequent amendment to the trust document, she named US Bancorp as successor trustee in the event of her death, resignation, or incapacity. In June 1998, due to her advancing age and various health problems, Arveson resigned as trustee. Throughout the period between June 1998 and Arveson's death in 2001, representatives of US Bancorp, as trustee of the Bula Buck Arveson Trust, managed Arveson's financial affairs.

Among other things, the trustee coordinated payment of Arveson's premiums to SAIF for workers' compensation insurance. Arveson had obtained a workers' compensation policy with SAIF in August 1997 to cover her in-home health care employees.[1] The trustee also transferred funds from the trust to Arveson's private checking account each month in order to cover payroll expenses. Once sufficient funds were deposited into Arveson's checking account, a payroll service would issue to each employee a personal check signed by Arveson.

---

[1] An acknowledgment letter from the Department of Consumer and Business Services (DCBS) named "Bula Arveson" as the insured party.

By early 2000, Arveson, then in her late nineties, was blind due to macular degeneration and had a staff of about 10 caregivers devoted solely to providing her round-the-clock care. Beginning in February 2000, Arveson employed claimant as a member of her full-time health care staff. Claimant, a chiropractic physician, ultimately supervised the staff and coordinated Arveson's health care needs. With claimant's help, Arveson was eventually able to move out of the care facility where she had been living and into a rented apartment. Claimant assisted with finding the apartment, and he personally handled a number of repairs necessary to facilitate Arveson's needs, such as the installation of heat lamps and extra storage.

Arveson died on July 1, 2001. The following day, claimant spoke with the trustee from US Bancorp. According to claimant,

> "in that conversation we—I think we mentioned that, of course, the care givers would not be staying on because there was no care giving to do. And at this time things had changed substantially. We had moved [Arveson out] of assisted living back into independent living. She had her own apartment. So in the discussion we talked about my staying on to assist * * * clos[ing] up the apartment so we could get it back in shape to surrender back to the owners."

Several weeks later, while working in Arveson's apartment, claimant fell from a ladder and injured his knee.

Claimant filed a claim with SAIF on July 20, 2001. SAIF denied the claim, asserting that US Bancorp, as insurer for the trustee, was the responsible carrier. Claimant then filed a claim with US Bancorp's workers' compensation carrier, Constitution State Service Company (Constitution). Constitution also denied responsibility for the claim.[2]

A hearing was held before an administrative law judge (ALJ) to determine whether SAIF or Constitution bore

---

[2] Arveson's policy had not yet expired at the time of claimant's injury. On August 2, the trustee notified SAIF of Averson's death and requested that SAIF cancel the policy effective July 28. The following day SAIF responded that "the workers' compensation insurance policy for Bula Arveson" had, as requested, been cancelled on July 28. DCBS later notified SAIF that, pursuant to ORS 656.427(2)(a) (2001), liability under the policy would expire on September 6, 2001.

responsibility for payment of compensation.[3] SAIF argued that claimant's employment contract with Arveson necessarily ended with her death and that, accordingly, when the trustee asked him to "stay on" to help settle Arveson's affairs, a new employment contract was formed between claimant and the trustee. SAIF did not dispute that coverage under Arveson's policy continued after her death; instead, SAIF suggested that claimant was no longer Arveson's employee at the time of his injury. US Bancorp agreed that claimant was employed by the trustee, but argued that "under the terms of the trust, U.S. Bank was operating with the explicit authority of Bula Arveson. In effect, there was a merger of Bula Arveson and the trust for business purposes" such that SAIF's policy covered both Arveson's and the trust's employees.

The ALJ agreed with US Bancorp. In his opinion and order, the ALJ found that Arveson had obtained the policy from SAIF "on her own behalf" and agreed that claimant was employed by the trust at the time of his injury. However, the ALJ concluded that, although the "employment contract relationship between Bula Arveson and [claimant] was terminated by common law at Bula Arveson's death," that fact was "irrelevant" because the contract for workers' compensation insurance covered trust employees. The contract with SAIF, the ALJ found, "was formed with the disclosed agent of Bula Arveson, the Bula Arveson Trust, and that agent was empowered by Bula Arveson to continue to conduct her financial affairs through the Trust Agreement after her death." As support for his conclusion, the ALJ noted that SAIF had received premium payments from the trust and had, for a number of years, conducted business relating to Arveson's policy via the trust. The ALJ also awarded attorney fees to claimant's attorney pursuant to ORS 656.307(5).

On review, the board reversed. First, the board reviewed the evidence—and, in particular, Arveson's application with SAIF and the subsequent DCBS acknowledgment letter—and determined that the policy insured Arveson's employees alone. In so determining, the board

---

[3] The parties did not dispute, nor do they dispute on judicial review, that claimant's injury was otherwise compensable.

noted that, although the trust managed Arveson's financial affairs, the trust remained a "legal entity that is separate from the creator of the trust and its beneficiaries." The board also held that claimant was not Arveson's employee at the time of his injury because once Arveson died, claimant could no longer provide services under his employment contract. Citing ORS 656.005(13)(a), the board held that, when the trustee asked claimant to "stay on" to help settle Arveson's affairs,

> "the trust, through its representatives, orally contracted with claimant to pay a remuneration and secured the right to direct and control claimant's services. We, thus, find that claimant was an employee of the trustee, US Bancorp, at the time of injury."

■        On judicial review, US Bancorp again argues that Arveson and the trust were "one entity" insured by SAIF's policy and that the trustee was not acting as a "separate employer" when he asked claimant to "stay on." Instead, according to US Bancorp, the trustee extended that invitation as Arveson's agent and, when claimant agreed, he was essentially continuing his employment for Arveson.

In addition, we understand US Bancorp to raise two related estoppel arguments. First, US Bancorp asserts that SAIF should be estopped from denying coverage because its actions and practices with respect to Arveson's policy, including the receipt of premium payments and coordination of audits, indicate that SAIF considered the trust to be the insured employer. US Bancorp further contends that, even assuming SAIF's policy covered Arveson alone, SAIF continued to accept payment from the trust after her death and knew that the trust was acting in Arveson's name, "not on its own behalf." Consequently, US Bancorp argues, SAIF should not be able to deny the legal effect of that relationship once a claim is filed.

We review for errors of law and substantial evidence. ORS 656.298; ORS 183.482(7), (8); *Office Depot, Inc. v. Joerres*, 195 Or App 756, 758, 99 P3d 789 (2004). US Bancorp's position is premised on a conflation of Arveson and the trust—indeed, US Bancorp boldly asserts "the trust and Mrs. Arveson were the same entity." The fundamental flaw

in that position is that, as the board recognized, "a trust is a legal entity that is separate from the creator of the trust and its beneficiaries." *See Jones and Jones*, 158 Or App 41, 50, 973 P2d 361, *adh'd to on recons*, 159 Or App 377, *rev den*, 328 Or 666 (1999). Consequently, the trustee of the Bula Buck Arveson Trust—an entity legally distinct from Bula Arveson individually—had the ability to hire and retain its own employees; and the trust (again, as distinct from Arveson individually) had the ability to secure workers' compensation coverage for those employees. *See* ORS 656.005(13)(a) ("[e]mployer" includes, *inter alia*, "trustee").

The obverse is, of course, also true. Arveson, individually, had the ability to hire and retain her own employees, and she had the ability to obtain workers' compensation coverage for those employees. Significantly, in that respect, the application that Arveson filed with SAIF listed "Bula Arveson" as the applicant; the Bula Buck Arveson Trust was not mentioned on the application at all. Other facts substantiate the board's determination that the SAIF policy that Arveson obtained and maintained covered only those persons whom Arveson personally employed: Arveson checked the word "individual" in a box on the application in which the applicant categorizes the type of employer; Arveson signed the application personally; US Bancorp did not make arrangements to add the trust to the policy after US Bancorp became trustee; and, as mentioned above, the DCBS acknowledgment letter named "Bula Arveson" as the insured party. *See* ORS 656.419(2)(a) (guaranty contract must contain the name of the employer). Finally, Arveson paid her employees with personally signed checks from a personal checking account, and SAIF calculated her premiums based on that payroll.

■ US Bancorp's estoppel-based arguments fail for the same fundamental reason. Although SAIF accepted premium payments from the trustee, the trust and Arveson—the policyholder—remained separate legal entities. That the trustee handled all of Arveson's business with SAIF does not somehow make the trust a party to the insurance contract between Arveson and SAIF. Further, even if SAIF accepted premium payments from the trustee on Arveson's policy *after* Arveson's death, that did not somehow extend the policy's

coverage to the posthumous rendition of services by persons who were no longer Arveson's employees. *See ABCD...Vision v. Fireman's Fund Ins. Companies*, 304 Or 301, 307, 744 P2d 998 (1987) ("Estoppel cannot be invoked to expand insurance coverage or the scope of an insurance contract.").

Because we sustain the board's determination that the policy was issued to Arveson individually, and we reject US Bancorp's estoppel arguments, SAIF can be responsible only if, at the time he was injured, claimant was still *Arveson's* employee. Thus, the inquiry reduces to whether claimant continued to be Arveson's employee after her death. Substantial evidence in the record supports the board's determination that the employment relationship between claimant and Arveson ended when claimant was no longer able to provide personal services to Arveson—that is, when Arveson died. In particular, claimant and the trustee both testified that the health care staff was presumed to have completed its service when Arveson died, and the trustee acknowledged that, had he so desired, he was in the position to refuse to allow claimant to "stay on" after Arveson died. *See Casto v. Murray*, 47 Or 57, 63, 81 P 883 (1905) (master-servant relationship is "severed by the employer's death"). After Arveson's death terminated claimant's employment by Arveson, the trustee hired claimant—and it was in the course of that employment that claimant was injured.

In sum, claimant was not employed by SAIF's insured at the time he was injured. Accordingly, SAIF was not responsible for claimant's injury.

Affirmed on petition and cross-petition.