**GRAIN DEALERS MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**PORTIA GRAIN COMPANY, A DIVISION OF AGRI–MARKETING, INC., Defendant.**

**No. J–C–86–241.**

United States District Court, E.D. Arkansas, W.D.

Nov. 21, 1988.

Paul McNeill, Barrett, Wheatley, Smith & Deacon, Jonesboro, Ark., for plaintiff.

David Laser, Walker, Snellgrove, Laser & Langley, Jonesboro, Ark., for defendant.

## ORDER

ROY, District Judge.

This is a declaratory judgment action wherein the plaintiff asks the Court to declare that there is no coverage under the insurance policy in issue for the acts involved. The parties have entered into an agreed stipulation of facts, which are set out as follows:

1. Grain Dealers Mutual Insurance Company, (hereinafter "Grain Dealers"), is an insurance company incorporated under the laws of Indiana and doing business in Arkansas.

2. Portia Grain Company, a division of Agri–Marketing, Inc., (hereinafter "Portia Grain"), is a Texas corporation licensed to do and doing business in the State of Arkansas.

3. Grain Dealers insures Portia Grain pursuant to a general liability insurance policy, number GL18719, which policy was in effect from July 31, 1984, to July 31, 1987, with property damage insurance limits of $100,000. The Completed Operations Hazard and Products Hazard Exclusion Endorsement L9141, is a part of the policy. Also as a part of the policy under the term "exclusion" is the following language: "This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insureds products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;"

4. In August 1986, Portia Grain purchased from Jerry Flippo of Portia, Lawrence County, Arkansas, wheat which was stored in grain bins on a farm owned by Jerry Flippo.

5. Portia Grain sold the wheat to Banquet Foods, a Division of Con–Agri Frozen Foods, (hereinafter "Banquet Foods"), in August of 1986, pursuant to an ongoing contract with Banquet Foods to provide grain to be used for chicken feed and the grain herein involved was shipped pursuant to that contract.

6. This wheat was shipped directly from Jerry Flippo's farm in Portia, Lawrence County, Arkansas, to Banquet Foods at Batesville, Arkansas, and never came into the actual physical custody of Portia Grain. The grain involved was never in the grain bins owned by Portia Grain.

7. It is alleged that this wheat was contaminated with a chemical, Chlordane, a pesticide. This wheat was fed to chickens under contract with Banquet Foods. As a result of the alleged contamination of the wheat, numerous flocks of chickens had to be destroyed. It is alleged that the dam-

age to the chickens and wheat is approximately $500,000.

8. Banquet Foods has written a letter putting Portia Grain on notice that it intends to pursue a claim against them for these damages. Banquet Foods claims that the presence of the Chlordane in the wheat violates the express requirements of the purchase contract, express warranties, and implied warranties of merchantability and fitness for a particular purpose and also claims that Portia Grain was negligent in the purchase, handling, sale and delivery of the wheat to Banquet. This claim made by Banquet Foods does apply to a warranty for fitness of quality of the named insured's products.

9. Portia Grain has placed Grain Dealers on notice that it contends there is coverage for these events under the policy in question.

10. Grain Dealers filed this lawsuit seeking a declaratory judgment on the question of coverage.

Grain Dealers has filed a motion for summary judgment, and the Portia Grain has filed a cross motion for summary judgment.

■ Grain Dealers asserts the product hazard exclusion contained in the policy in endorsement L9141 precludes any coverage, which states:

"It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to *bodily injury* or *property damage* included within the *Completed Operations Hazard* or the *Products Hazard*."

The Products Hazard exclusion in endorsement L9141 provides: "This endorsement modifies such insurance as is afforded by the provisions of the policy" and "it is agreed that such insurance as is afforded by the ... property damage liability coverage does not apply to ... property damage included within ... the Products Hazard."

"Products Hazard," as defined in the policy, "includes ... property damage arising out of the named insured's products or reliance upon a representation or warranty

made at any time with respect thereto, but only if the ... property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others."

"Property damage" is defined in the policy to include "physical injury to or destruction of tangible property which occurs during the policy period (July 31, 1984 to July 31, 1987)."

Portia Grain is relying upon the basic insuring provisions of the policy, and suggests that further support for coverage is found in the language of the following exclusion:

"This insurance does not apply: (a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner ..."

Portia contends that the Banquet claim plainly arises from an alleged breach of warranty of fitness or quality of the wheat sold. Portia also contends that endorsement L6111 contractual liability coverage is expanded, and that the "broad form" endorsement provides coverage.

The Court is persuaded by the arguments and legal authority presented by the plaintiff that no coverage exists.

The loss of the chickens that had to be destroyed is "property damage" as defined in the policy. The contaminated wheat sold by Portia Grain to Banquet Foods is a "named insured's product."

The Court finds that the property damage (the loss of chickens) arising out of the named insured's product (the wheat) meets the requirements necessary under the product hazard exclusion. The damages occurred both away from premises owned by or rented to the named insured and after physical possession of such products had been relinquished to others. The property damage occurred on the site of Banquet's chicken-raising operations and away from

Portia Grain premises and the damage did not occur until after Portia Grain relinquished possession of the wheat to Banquet Foods who then fed it to the chickens.

The Court is of the opinion that the policy language is clear and unambiguous and coverage should therefore be determined by the Court. *Baskette v. Union Life Insurance Co.*, 9 Ark.App. 34, 652 S.W.2d 635 (1983).

If the language of the exclusion clause is plain and unambiguous, the clause must be given full force and effect. *Waterman Steamship Corp. v. Snow*, 222 F.Supp. 892, 896 (D.Or.1963), *aff'd.*, 331 F.2d 852 (9th Cir.1964). The Court finds the language in the exclusionary clause is clear and unambiguous. *See Kansas City Insulation v. American Mutual Liability Insurance Co.*, 405 F.2d 53 (8th Cir.1968); *Standard Accident Insurance Co. v. Roberts*, 132 F.2d 794, 797 (8th Cir.1942).

■ There is another item worthy of note in this case. In the insurance policy which has been highlighted by the parties [1], there is one provision entitled "Property Damage Exclusion Endorsement," which provides:

> In consideration of the premium charged under this policy, it is hereby agreed that such insurance as is afforded by Coverage B of the policy does not apply to any damage or loss resulting from injury to or destruction of property dusted, sprayed, fertilized or treated in any manner by or for the insured as respects property owned, leased or rented by the insured or to any property on which the insured or any other person on behalf of the insured is applying or has applied fertilizers, insecticides, herbicides, pesticides or is or has conducted weed burning operations.

In another document entitled "Amendment of Broad Form Comprehensive General Liability Endorsement" the following language appears:

> In consideration of the premium charged under this policy, it is hereby agreed that Coverage VI Broad Form Property Damage Liability Coverage (including Completed Operations) of the Broad Form Comprehensive General Liability Endorsement does not apply to any damage or loss resulting from injury to or destruction of property on which the insured or any other person on behalf of the Insured is applying or has applied fertilizers, insecticides, herbicides, pesticides or is or has conducted weed burning operations.

The parties have stipulated that Banquet alleges the wheat involved was contaminated with a pesticide.

The defendant, Portia Grain, contends that Grain Dealers waived the grounds for denial of coverage of the policy based upon application of pesticides by not raising the defense in the complaint for declaratory judgment. Defendant cites Appleman, *Insurance Law and Practice*, in support of his position. A further reading in Appleman indicates that the exclusions referring to the application of pesticides have not been waived.

> The general rule has grown up that in order for the insurance to claim a waiver or estoppel to rely upon particular defenses by a denial of liability upon a different ground, it must be shown that he was lulled into security by the company's action so that it would be unfair to permit the defense, or that there was a change of position, or prejudicial reliance thereon. (footnote omitted).

Appleman, *Insurance Law and Practice*, § 9261.

Nothing in the record indicates that the defendant changed its position, or prejudicially relied upon the company's action. The defendant takes the position that even if the exclusions apply, the pesticides were not applied by the insured or any person on behalf of the insured, as required in the exclusion. Although this presents more of a close question, the Court is not persuaded that the pesticide was not applied on behalf of the insured. In any event, although this issue may contain some disputed factual

---

1. Because there were so many provisions upon which the parties relied, the Court asked the attorneys to provide it with a copy of the policy with the relevant provisions highlighted.

questions, the Court nevertheless finds no coverage based upon the other arguments presented above.

Based upon the foregoing, the Court hereby grants summary judgment in favor of the plaintiff.

ORDERED.