504 S.E.2d 135

Karen L. POTESTA, Cynthia P. Keane, dba C & K Associates, a General Partnership; and Bossio Enterprises, Incorporated, a Corporation, Plaintiffs,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, Defendant.

Karen L. POTESTA, Cynthia P. Keane, dba C & K Associates, a General Partnership; and Bossio Enterprises, Incorporated, a Corporation, Plaintiffs,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, a Corporation, Defendant.

No. 24441.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 1998.

Decided May 15, 1998.

Avrum Levicoff, Joseph E. Starkey, Jr., Brown & Levicoff, L.C., Pittsburgh, PA, for Plaintiffs.

John E. Busch, Peter G. Zurbuch, Busch & Talbott, L.C., Elkins, for Defendant.

DAVIS, Chief Justice:

The United States Court of Appeals for the Fourth Circuit presents us with two certified questions involving the application of the doctrines of waiver and estoppel when an insurer has initially stated one reason for denying coverage to its insured and, in subsequent litigation, has attempted to assert another, previously unarticulated reason for denying coverage. We conclude that, in order to establish that an insurer has impliedly waived its right to assert a previously unarticulated reason for denying coverage, the insured must show that the insurer intentionally relinquished a known right. Alternately, in order to apply the doctrine of estoppel, the insured must prove that s/he relied to her/his detriment on the initially stated ground for denial. We further hold that the doctrine of waiver may not be applied to extend insurance coverage beyond that contracted for by the parties; however, under the appropriate circumstance, the doctrine of estoppel may be so applied.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The essential facts underlying this case are undisputed. C & K Associates owned a com-

mercial building in Morgantown, West Virginia, which it leased to Bossio Enterprises, Inc. On April 15, 1993, Bossio subleased this building to Finial, Inc., and Robert Lloyd Vecchio, the owner and president of Finial. Included within the terms of the sublease were an indemnity clause, holding Finial liable for any losses occasioned by Finial's use and occupation of the building, and a requirement that Finial obtain and maintain liability insurance on the property. In compliance with the sublease's insurance requirement, Finial obtained a businessowners insurance policy from USF & G, providing coverage from May 19, 1993, to May 19, 1994.[1]

In early May, 1993, allegedly before coverage under the USF & G policy had gone into effect, Finial undertook extensive renovations of the building to make it better suited to its business purposes. These renovations included power washing the exterior of the building, for which Finial contracted with Jackson's Wash–On–Wheels on May 5, 1993. It appears that the exterior cleaning was completed around May 8, 1993. Presumably as a result of both the renovations and the exterior power washing, severe and irreparable damage occurred to the building's brick facade and its basic structural soundness, including weakening, deterioration, cracking, and movement of the exterior walls, destruction of mortar joints, and varying degrees of water damage. Consequently, C & K had the building demolished on May 24, 1993.

On September 29, 1993, C & K filed a civil action against Finial, Vecchio, and Jackson's Wash–On–Wheels,[2] in the Circuit Court of Monongalia County, seeking to recover damages resulting from the demolished building. USF & G, Finial's insurer, retained counsel to represent Finial. After three months of such representation, on December 30, 1993, USF & G sent Finial a reservation of rights letter, informing Vecchio that there were

"some questions of coverage provided in the coverage forms of your liability coverage." The letter specifically referenced "exclusions [sic] M on page 3 of 10; exclusions 1, 5 and 6." The referenced exclusions, which are part of the Liability Coverage Form, state:

2. Exclusions.

This insurance does not apply to:

. . . .

m. "Property damage" to:

(1) Property you own, rent or occupy;

. . . .

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or . . .

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

In addition, the letter expressly stated "[b]ecause of the question of coverage and for any other reasons as they may appear, any investigation made or action taken by ourselves or other representatives of USF & G will not constitute a waiver of any rights USF & G may have under the policy." Shortly thereafter, on January 24, 1994, USF & G formally denied coverage based upon USF & G's determination that "the allegations in the complaint are excluded under Exclusion M in our policy." USF & G further notified Finial of its intent to withdraw its representation of Finial.

Following USF & G's denial of coverage, C & K and Finial entered negotiations whereby C & K planned to move for summary judgment against Finial, with no opposition from Finial, in order to ultimately recover its loss-

---

1. Finial's coverage under the USF & G policy included a liability coverage form, with general policy limits of $2 million, and a tenant liability coverage form, with limits of $50,000.

2. C & K also filed a property damage claim with its own insurance company, Cincinnati Insurance Company [hereinafter Cincinnati]. Cincinnati thereafter filed a declaratory judgment action in the Monongalia County Circuit Court

seeking a determination as to the precise nature of C & K's coverage under this policy. Although the coverage issue remains controverted, it has been stayed pending further resolution of the coverage issues under Finial's USF & G policy. Nevertheless, Cincinnati has paid C & K $75,750 in partial settlement of its disputed coverage issues.

es from USF & G.[3] To effectuate this arrangement, Finial apparently assigned all of its rights under the USF & G policy to C & K.[4] On February 8, 1995, C & K filed its motion for summary judgment, which the circuit court granted by order entered March 21, 1995. The circuit court determined that Finial was contractually liable to C & K, under the indemnification terms of Finial's sublease, in the amount of $294,292.50.

C & K then filed a declaratory judgment action against USF & G in the Circuit Court of Monongalia County. Citing diversity jurisdiction, USF & G successfully removed the action to the United States District Court for the Northern District of West Virginia. C & K then moved for summary judgment, on September 13, 1995, alleging, in part, that USF & G's reliance upon "Exclusion M" of the Liability Coverage Form as a reason for denying coverage was misplaced. USF & G cross-moved for summary judgment, conceding that it had, indeed, chosen an incorrect reason for denying coverage.[5] However, USF & G contended that it still had a valid reason for denying coverage. USF & G now cited provisions contained in the Property Coverage Part of the Businessowners Policy as appropriate grounds for denying coverage. USF & G explained that the Property Cover-

age Part of the Businessowners Policy applied because it was incorporated, by reference, into the Tenant Liability provisions of the policy. The exclusion contained in the Property Coverage Part of the underlying Businessowners Policy, upon which USF & G now asserts denial of coverage to Finial was proper, provides, in relevant part: [6]

4. We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.

. . . .

**b. Negligent Work.** Faulty, inadequate or defective:

. . . .

2. Designing, specification, workmanship, repair, construction, renovation, remodeling, grading, compaction;

3. Materials used in repair, construction, renovation or remodeling[.] [7]

The district court referred the parties' motions for summary judgment to a United States Magistrate for findings of fact and conclusions of law. The magistrate judge surmised that the Supreme Court of Appeals of West Virginia would most likely rely upon

---

3. These negotiations also contemplated C & K's dismissal of its claims, with prejudice, against Vecchio.

4. We note that while C & K claims that Vecchio, acting on behalf of Finial, assigned all of Finial's rights under the USF & G policy to C & K, USF & G asserts that whether Vecchio ever made an assignment of any cause of action against USF & G to C & K is contested in the Fourth Circuit Court of Appeals. This issue is not before us and will not be addressed.

5. The USF & G policy specifically stated that exclusionary provision "m," pertaining to "Property damage," upon which USF & G had relied in denying coverage to Finial, did not apply to rental property:

> With respect to damage to premises rented to you, only exclusions a., b. and k. apply. This insurance applies only if insurance for such damage under the Property Coverage Part forming a part of this policy would also apply if provided by us. The Tenant Liability Limit of Insurance applies to this coverage as described in LIMITS OF INSURANCE (SECTION III).

6. We note at this juncture that we do not determine whether USF & G is permitted to rely on this previously unasserted ground for declination. The United States Court of Appeals must make that decision by applying the principles of law set forth in this opinion. Similarly, we do not address the applicability of this exclusion to the facts presented in this case.

7. C & K represents that, before the district court, it also argued that the exclusionary language quoted by USF & G as prohibiting coverage under the tenant liability form specifically provided coverage for Finial's renovation work. In this regard, C & K argues that the exclusion does not apply because the exclusion's "but if" clause covers losses resulting from a "covered loss." Since the building's demise and ultimate destruction, on May 24, 1993, resulted from Finial's renovations and since renovations were a cause of loss covered by the USF & G policy, C & K contends that USF & G cannot deny coverage. USF & G defended its position before the district court by claiming that the loss did not occur during the policy period, despite the fact that the Circuit Court of Monongalia County had found the policy to be in effect on the date of loss.

the case of *McLaughlin v. Connecticut Gen. Life Ins. Co.*, 565 F.Supp. 434, 451–52 (N.D.Cal.1983), in deciding the case presented by C & K and USF & G. Accordingly, the magistrate adopted the *"McLaughlin* rule," which states that where an insurer relies upon specific grounds for denying a claim, the insurer is thereafter deemed, with respect to subsequent litigation, to have waived any and all additional reasons, apparent from a reasonable investigation, that it may have asserted in support of its earlier denial.[8] In other words, the magistrate recommended that, because USF & G had not relied upon the exclusions contained in the Property Coverage Form in initially denying coverage to Finial, USF & G had waived its right to assert these exclusions and could not now, in subsequent litigation, base its declination of coverage upon these previously unstated reasons.

Accordingly, the magistrate judge recommended granting, and the district judge granted, C & K's motion for summary judgment. Both parties then appealed the district court's decision to the United States Court of Appeals for the Fourth Circuit. Recognizing the imprecise nature of the law in West Virginia with respect to the issues raised by the parties, the Fourth Circuit Court certified to this Court the two following questions:

### Question 1

Does West Virginia law require a showing of detrimental reliance by the insured in order to assert waiver or estoppel against an insurer who initially denies coverage on a specific ground, but then attempts to rely on an alternate ground for the denial of coverage in subsequent litigation?

**8.** The certification order of the Fourth Circuit Court of Appeals notes that "[t]he magistrate judge failed to acknowledge that the *McLaughlin* rule had been modified by the Ninth Circuit in *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1559–60 (9th Cir.1991) to require the insured to demonstrate detrimental reliance or misconduct."

**9.** *See* W.Va.Code § 51–1A–4 (1996) (Supp.1997) ("The supreme court of appeals of West Virginia may reformulate a question certified to it."); Syl.

### Question 2

Does the Supreme Court of Appeals of West Virginia adopt the statement of West Virginia law in *Insurance Co. of North America v. National Steel Service Center, Inc.*, 391 F.Supp. 512, 517–22 (N.D.W.Va. 1975)—i.e., the principles of waiver and estoppel do not operate to extend insurance coverage beyond the terms of the insurance contract, except if the insurer expressly relinquishes his right to deny coverage or if the insured detrimentally relies on an insurer's unconditional defense of an action brought against the insured?

We proceed now to a review of the parties' arguments and an analysis of the applicable law in response to the certified questions placed before us. Pursuant to our authority to do so, we rephrase the certified questions before us as follows:[9]

### Question 1

Must an insured have detrimentally relied upon an insurer's previously stated reason for denying coverage in order to assert waiver or estoppel to prevent the insurer, in subsequent litigation, from asserting other, previously unarticulated reasons for denying coverage?

### Question 2

Are the principles of waiver and estoppel inoperable to extend insurance coverage beyond the terms of an insurance contract except where either the insurer expressly relinquishes its right to deny coverage or the insured detrimentally relies upon the insurer's unconditional defense of an action brought against the insured?

pt. 3, *Kincaid v. Mangum,* 189 W.Va. 404, 432 S.E.2d 74 (1993) ("When a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under both the Uniform Certification of Questions of Law Act found in W.Va.Code, 51–1A–1, *et seq.* and W.Va. Code, 58–5–2 [1967], the statute relating to certified questions from a circuit court of this State to this Court.").

## II.

### STANDARD OF REVIEW

■ The standard to be applied in reviewing a certified question was recently set forth in Syllabus point one of *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996), wherein we held that "[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo.*" *See also* Syl. pt. 1, *Williamson v. Greene*, 200 W.Va. 421, 490 S.E.2d 23 (1997) (same).

## III.

### DISCUSSION

A. *Must an insured have detrimentally relied upon an insurer's previously stated reason for denying coverage in order to assert waiver or estoppel to prevent the insurer, in subsequent litigation, from asserting other, previously unarticulated reasons for denying coverage?*

C & K suggests that this Court should answer this question in the negative. In this regard, C & K proposes we adopt a "presumed prejudice/conditional waiver" rule: where an insurer states a specific reason for denying coverage, the law would presume that the insured has relied on this stated reason to his/her detriment, and the stated reason would thereafter operate as a "conditional waiver" of all unarticulated reasons for declination that were not initially asserted by the insurer. Under this proposed rule, the insurer would then bear the burden of proving, by clear and convincing evidence, that its insured had not relied to his/her detriment upon the specifically stated reason for declination. C & K suggests that this approach is consistent with our case law, statutory law and insurance regulations, which require an insurer to make a reasonable investigation as to potential coverage issues and to inform its insured, in writing, as to the specific reason(s) upon which coverage is denied.[10] C & K further contends that such a rule comports with public policy in that it would encourage insurers to fulfill their duty to reasonably investigate claims and promptly notify their insureds of coverage decisions.

USF & G urges this Court to answer this question affirmatively. Focusing on the doctrine of estoppel, USF & G argues that an insured must detrimentally rely upon the original reason stated by his/her insurer for denying coverage in order to assert that the insurer may not rely upon different declination grounds in subsequent litigation. USF

---

10. In support of its argument that we should adopt a "conditional waiver/presumed prejudice" rule, C & K cites the following authorities: W.Va.Code § 33–11–4(9)(c), (d), (n) (1985) (Repl. Vol.1996) (requiring insurer to conduct prompt and reasonable investigation of claims and to notify insured as to reasons for declination of coverage; providing that frequent failure to reasonably investigate claims or to provide such notice is an "unfair claim settlement practice"); 8B W.Va.C.S.R. § 114–14–6 (1981) (permitting insurer to rely upon specific policy provision in denying coverage only if insurer refers to such provision in its declination notice; establishing manner in which insurer must notify insured of denial of coverage); W.Va.R.Civ.P. 15(b) (permitting party to amend pleading to assert additional defense where adverse party will not be prejudiced by such amendment); Syl., *Farmers & Mechanics Mut. Fire Ins. Co. v. Hutzler*, 191 W.Va. 559, 447 S.E.2d 22 (1994) ("When a complaint is filed against an insured, an insurer must look beyond the bare allegations contained in the third party's pleadings and conduct a reasonable inquiry into the facts in order to ascertain whether the claims asserted may come within the scope of the coverage that the insurer is obligated to provide."); Syl. pt. 7, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987) ("An insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion.").

Our resolution of this case adequately addresses C & K's concerns as they are reflected by the above cited authorities. Insurers will be encouraged to conduct reasonable investigations of claims and to notify their insureds of reasons for declination, as a failure to do so may result in a finding that the insurer has waived any unasserted grounds of forfeiture, or a finding that the insurer acted in bad faith and is thus estopped from asserting previously unidentified defenses, even if they are based on noncoverage. This opinion also recognizes that an insurer may not assert a new ground for declination where the insured has reasonably relied to his/her detriment on previously asserted ground(s) for declination and would be prejudiced by the assertion of new grounds. Finally, nothing in this opinion changes the *McMahon* rule that an insurer "seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion."

& G represents that this is the view shared by the majority of jurisdictions addressing this issue.

■ Arguably, the issue presented in the first certified question submitted by the district court was previously resolved by our holding in Syllabus point 3 of *Jarvis v. Pennsylvania Cas. Co.*, wherein we held:

> The denial of liability under a policy of insurance on one or more grounds at a time when insurer has knowledge of other grounds of forfeiture, does not result in a waiver or estoppel as to such other grounds, where no prejudice results to the insured from reliance on the initial statement of the insurer.

129 W.Va. 291, 40 S.E.2d 308 (1946). Our holding in *Jarvis* refers both to waiver and estoppel. It has been observed that these terms are often used interchangeably with respect to insurance law. *See Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 44 Cal. Rptr.2d 370, 388, 900 P.2d 619, 637 (1995) ("in the insurance context the terms 'waiver' and 'estoppel' are sometimes used interchangeably"); 18 Couch on Insurance 2d *Waiver and Estoppel* § 71:3, at 217 (1983) (recognizing that in some states the terms "waiver" and "estoppel" have been used interchangeably). *See, e.g.*, Syl. pt. 3, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987) ("Detrimental reliance is essential to the assertion of waiver or estoppel."). The fact that these two terms are frequently used interchangeably notwithstanding, they represent two entirely different doctrines. *See* 18 Couch on Insurance 2d, *supra* ("The terms 'waiver' and 'estoppel' are not interchangeable in the law of insurance, and a substantial difference exists between them."). Indeed, we recently expressed that these two doctrines are distinct and are to be applied separately when we explained, in a case involving insurance issues, that:

> Although the doctrines of waiver and estoppel are both grounded in equity, they differ significantly in application. To effect a waiver, there must be evidence which demonstrates that a party has intentionally relinquished a known right. Estoppel applies when a party is induced to

act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact.

Syl. Pt. 2, *Ara v. Erie Ins. Co.*, 182 W.Va. 266, 387 S.E.2d 320 (1989). Because our holding in *Jarvis* is unclear with respect to the distinction between estoppel and waiver, we will revisit this issue and attempt to clarify the law in this respect. We begin with a brief discussion of waiver and estoppel. We then proceed to a review of how other jurisdictions have resolved the issue presented in this certified question.

■ As stated in our above quoted holding in *Ara*, to establish waiver there must be evidence demonstrating that a party has intentionally relinquished a known right. *See also Dye v. Pennsylvania Cas. Co.*, 128 W.Va. 112, 118, 35 S.E.2d 865, 868 (1945) (" 'Waiver is the voluntary relinquishment of a known right'." (citation omitted)). This intentional relinquishment, or waiver, may be expressed or implied. *Ara* at 269, 387 S.E.2d at 323 ("Waiver may be established by express conduct or impliedly, through inconsistent actions." (citing *Creteau v. Phoenix Assurance Co.*, 202 Va. 641, 119 S.E.2d 336, 339 (1961))). However, where the alleged waiver is implied, there must be clear and convincing evidence of the party's intent to relinquish the known right. *Hoffman v. Wheeling Sav. & Loan Ass'n*, 133 W.Va. 694, 713, 57 S.E.2d 725, 735 (1950) (" 'A waiver of legal rights will not be implied except upon clear and unmistakable proof of an intention to waive such rights.' " (Citation omitted)). Furthermore, "[t]he burden of proof to establish waiver is on the party claiming the benefit of such waiver, and is never presumed." *Id.* (citing *Hamilton v. Republic Cas. Co.*, 102 W.Va. 32, 135 S.E. 259 [ (1926) ] ). *See also Mundy v. Arcuri*, 165 W.Va. 128, 131, 267 S.E.2d 454, 457 (1980) ("One who asserts waiver . . . has the burden of proving it." (Citations omitted)); 19 Michie's Jurisprudence *Waiver* § 5 at 678 (1991) ("The burden of proof is on the one asserting a waiver.").

■ The doctrine of waiver focuses on the conduct of the party against whom waiv-

er is sought, and requires that party to have intentionally relinquished a known right. There is no requirement of prejudice or detrimental reliance by the party asserting waiver.[11] *See Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 387, 900 P.2d 619, 636 (1995) ("California courts have applied the general rule that waiver requires the insurer to intentionally relinquish its right to deny coverage and that a denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial."); *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 387 (en banc) (Mo.1989) (" 'A waiver does not necessarily imply that one has been misled to his prejudice or into an altered position.' ") (quoting *Farm Bureau Mut. Auto. Ins. Co. v. Houle*, 118 Vt. 154, 160, 102 A.2d 326, 330 (1954)).

Implied waiver has been found to occur in various circumstances. In one case, an insurer was deemed to have waived a sixty-day time limit imposed on the insured to submit a proof of loss where the insurer failed to initially deny the claim on that ground, acknowledged receipt of the proof of loss that was submitted after the sixty-days had expired, and requested additional information from the insured in its letter acknowledging receipt of the proof of loss. *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Hawai'i 120, 920 P.2d 334 (1996). In *United States Fire Insurance Co. v. Fleekop*, the District Court of Appeal of Florida concluded that an insurer impliedly waived its challenge to the sufficiency of a notice of potential claims it received from its insured where it was silent as to the sufficiency of the notice for ten months, did not request any additional information from its insured and did not raise the issue of the sufficiency of notice until after a lawsuit had been initiated. 682 So.2d 620 (Fla.Dist.Ct.App.1996).

 The focus of estoppel, on the other hand, is on the party seeking its application:

[E]stoppel applies when a party is induced to act or to refrain from acting *to [his/]her detriment* because of [his/]her reasonable reliance on another party's misrepresentation or concealment of a material fact.... Estoppel is properly invoked to prevent a litigant from asserting a claim or a defense against a party who has *detrimentally* changed his[/her] position in reliance upon the litigant's misrepresentation or failure to disclose a material fact.

*Ara* at 270, 387 S.E.2d at 324 (emphasis added) (citations omitted). We have also held:

In the law of insurance the elements of an estoppel against an insurer are conduct or acts on the part of the insurer which are sufficient to justify a reasonable belief on the part of the insured that the insurer will not insist on a compliance with the provisions of the policy and that the insured in reliance upon such conduct or acts has changed his position to his detriment.

Syl. pt. 4, *Knapp v. Independence Life and Accident Insurance Co.*, 146 W.Va. 163, 118 S.E.2d 631 (1961). Thus, unlike waiver, the doctrine of estoppel requires detrimental reliance. *See American States Ins. Co. v. McGuire*, 510 So.2d 1227, 1229 (Fla.Dist.Ct. App.1987) ("when an insurer specifies the ground upon which it denies coverage to its insured, and the insured pursues a course of action in reliance on the insurer's asserted defense, the insurer is estopped to raise a new ground upon which to deny coverage"); *Goodwin v. Federal Mut. Ins. Co.*, 180 So. 662, 666 (La.Ct.App.1938) ("The fact that defendant [insurer] wrote the insured and the beneficiaries that the policies were canceled for one reason does not bar it from urging this and other reasons in defense of the effort to hold it liable on the contracts. Estoppel of this character is not sustainable unless a party has been induced to rely upon asserted facts or representations and thereby moved or acted to his detriment, or in a manner he would not have done but for his reliance upon such asserted facts or representations."); *ABCD...Vision v. Fireman's Fund Ins.*, 84 Or.App. 645, 734 P.2d 1376 (1987) (recognizing that doctrine of estoppel requires showing that insured was prejudiced

---

11. To the extent that it refers to both waiver and estoppel, we disapprove of Syllabus point 3 of *National Mut. Ins. Co. v. McMahon & Sons, Inc.*,

177 W.Va. 734, 356 S.E.2d 488 (1987) ("Detrimental reliance is essential to the assertion of waiver or estoppel.").

by the insurer's attempt to assert an alternate ground for declination when it had earlier denied coverage on a different, yet specific, ground), *overruled on other grounds by ABCD...Vision v. Fireman's Fund Ins.*, 304 Or. 301, 744 P.2d 998 (1987). Moreover, we have recognized that "[o]ne who asserts ... estoppel has the burden of proving it." *Mundy v. Arcuri*, 165 W.Va. 128, 131, 267 S.E.2d 454, 457 (1980) (citations omitted).

 As the foregoing analysis demonstrates, waiver and estoppel are two distinct doctrines which must be independently applied. The elements of proof required of an insured who seeks to prevent his/her insurer from asserting a previously unidentified ground for declination will depend upon which theory the insured chooses to pursue.[12] Consequently, we must provide a two-part answer to the first question certified by the Fourth Circuit Court of Appeals. First, we hold that there is no requirement that an insured have detrimentally relied upon an insurer's previously stated reason(s) for denying coverage in order to assert *waiver* to prevent the insurer, in subsequent litigation, from asserting other, previously unarticulated reasons for denying coverage. Rather, the insured must show, by clear and convincing evidence where waiver is implied, that the insurer intentionally and knowingly waived the previously unarticulated reason(s) for denying coverage. Second, we hold that in order to rely on the doctrine of *estoppel* to prevent an insurer, who has previously stated one or more reasons for denying coverage, from asserting other, previously unarticulated reasons for denying coverage, the insured must prove that s/he was induced to act or to refrain from acting to her/his detriment because of her/his reasonable reliance on the previously stated grounds for declination. Our second holding conveys the true meaning of Syllabus point 3 of *Jarvis*. *Jarvis'* formulation incorrectly included waiver.

Other jurisdictions have similarly distinguished the doctrines of waiver and estoppel by requiring prejudicial reliance for estoppel, and/or recognizing that prejudicial reliance is not an element of waiver in that waiver focuses on a party's intentional relinquishment of a known right. *See Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Hawai'i 120, 139, 920 P.2d 334, 353–54 (1996) (explaining that waiver does not require prejudice to the party seeking waiver and defining waiver as " 'an intentional relinquishment of a known right, a voluntary relinquishment of rights, and the relinquishment or refusal to use a right' "; further explaining that estoppel " 'is limited in its application to those instances where the insured has suffered some degree of prejudice as a result of the insurer's attempt to shift its defense from one basis to another' " (citations omitted)); *St. Paul Fire and Marine Ins. v. Molloy*, 291 Md. 139, 145, 433 A.2d 1135, 1138 (1981) (defining waiver as " 'the intentional relinquishment of a known right' existing for the benefit of the insurer"; explaining that "consistent reliance by an insurer on one condition or defense may have the effect of constituting a waiver of other possible known forfeitures"; and noting that normally, the question of whether waiver has occurred is answered by the trier of fact (citations omitted)); *Rubinstein v. Jefferson Nat'l Life Ins. Co.*, 268 Md. 388, 393, 302 A.2d 49, 52 (1973) ("One asserting the benefit of an estoppel must have been mislead to his injury and have changed his position for the worse, having believed and relied on the representations of the party sought to be estopped." (citations omitted)); *Palumbo v. Metro. Life Ins. Co.*, 293 Mass. 35, 37, 199 N.E. 335, 336 (1935) (explaining that there is no ground for estoppel where the "insured did not change his[/her] position in reliance upon anything said or done by the [insurer]," and recognizing, with respect to waiver, that "it has often been held in insurance cases that a refusal to pay, expressly put upon one ground, is a waiver of other valid grounds based on noncompliance with procedural conditions of liability" (citations omitted)); *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 388 (en banc) (Mo.1989) (explaining differences between estoppel and

---

12. By distinguishing the doctrines of waiver and estoppel in this manner, we do not intend to imply that a party could not raise both theories, presuming s/he could fulfil the burden of proof as to each.

waiver, expressing a preference for application of estoppel, and stating that "in the absence of either (1) an express waiver by the insurer or (2) conduct which clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right, the insured must show prejudice before the rule [that once an insurer has denied liability on a specific ground, it may not subsequently assert a different ground for denying liability] may be invoked"); *Bacon v. American Ins. Co.*, 131 N.J.Super. 450, 460, 330 A.2d 389, 395 (Ct.Law Div.1974) (discussing waiver and estoppel, noting that "[i]n order for a denial of liability to constitute a waiver of the right to raise a condition of the policy, such denial must be wrongful and unequivocal"; and recognizing further that estoppel requires "a

misleading or inaccurate representation of material facts with an intent to induce reliance" and actual detrimental reliance); *D.E.M. v. Allickson*, 555 N.W.2d 596 (N.D. 1996) (distinguishing between waiver and estoppel, applying estoppel and requiring prejudicial reliance); *Waterford v. Reliance Ins. Co.*, 226 A.D.2d 887, 640 N.Y.S.2d 671 (N.Y.App.Div.1996) (explaining that when insurer, in declining coverage, fails to notify insured of ground for declination involving nonexistence of coverage, insured can challenge insurer's subsequent assertion of alternate grounds for nonexistence of coverage only under estoppel theory, and under that theory insured must show that s/he suffered prejudice or detrimentally relied upon the insurer's original declination of coverage).[13]

**13.** While we believe we have adopted the better rule, we recognize that some courts have apparently adopted alternate rules that require a showing of prejudice. In many of these opinions, the terms estoppel and waiver are interchanged. Therefore, it is sometimes difficult to conclusively determine the exact rule being applied. *See Grain Dealers Mut. Ins. v. Portia Grain Co.*, 699 F.Supp. 1380 (E.D.Ark.1988) (" 'The general rule has grown up that in order for the insurance [sic] to claim a waiver or estoppel to rely upon particular defenses by a denial of liability upon a different ground, it must be shown that he was lulled into security by the company's action so that it would be unfair to permit the defense, or that there was a change of position, or prejudicial reliance thereon. (footnote omitted)' " (citing Appleman *Insurance Law and Practice* § 9261)); *Jones v. Universal Cas. Co.*, 257 Ill.App.3d 842, 852, 196 Ill.Dec. 397, 404, 630 N.E.2d 94, 101 (1994) (concluding that "in order to establish waiver or estoppel, the [insured] must show some detrimental reliance on the fact that [the insurer] did not raise [a particular defense] in its letter denying coverage"); *Terre Haute First Nat. Bank v. Pacific Employers*, 634 N.E.2d 1336, 1338 (Ind.Ct.App.1993) (recognizing that "the insurer is deemed to have waived a defense to coverage under the policy only when the insured is prejudiced by the insurer's delay in notifying the insured of that defense"); *Larson v. Occidental Fire and Cas. Co.*, 79 N.M. 562, 564, 446 P.2d 210, 212 (1968) ("Ordinarily, when an insurer, with knowledge of all pertinent facts, denies liability upon a specific ground, all other grounds are deemed to be waived.... This waiver is conditioned, however, upon a showing of detriment or prejudice." (citations omitted)), *overruled on other grounds by Estep v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 105, 703 P.2d 882 (1985); *Council v. Metropolitan Life Ins. Co.*, 42 N.C.App. 194, 196, 256 S.E.2d 303, 305 (N.C.Ct. App.1979) (" 'where an insurer denies liability for a loss on one ground, at the time having

knowledge of another ground of forfeiture, it cannot thereafter insist on such other ground *if the insured has acted on its asserted position and incurred prejudice* or expense by bringing suit, or otherwise.' " (Quoting *Gouldin v. Inter–Ocean Ins. Co.*, 248 N.C. 161, 165, 102 S.E.2d 846, 849 (1958))); *Smith v. Shelby Ins. Co.*, 936 S.W.2d 261, 264 (Tenn.Ct.App.1996) (requiring "reliance and detrimental change of position" to support claim of waiver or estoppel); *Lancon v. Employers Nat. Life Ins. Co.*, 424 S.W.2d 321, 322–23 (Tex.Ct.App.1968) (referring to waiver and estoppel in the same definition, but requiring detrimental reliance).

A few courts have apparently adopted a rule that an insurer who has asserted a specific ground for declination may not later assert an alternate ground regardless of whether the insurer intended to relinquish a known right or whether the insured would be prejudiced by the subsequent assertion. *See Home Indem. Co. v. Reed Equip. Co., Inc.*, 381 So.2d 45, 50 (Ala. 1980) (omitting requirement of prejudice in holding generally "[w]here an insurer specifically disclaims liability because of one ground of forfeiture, it waives all other grounds of forfeiture which might have been stated but were not.... Similarly, an insurer who disclaims liability solely on a theory of noncoverage thereby waives his defenses with respect to any grounds of forfeiture which might have been raised," (citations omitted)); *Provident Life & Accident Ins. Co. v. Adie*, 176 F.R.D. 246, 249 (E.D.Mich.1997) (observing that "[i]t must be accepted as the settled law of this State [Michigan], that when a loss under an insurance policy has occurred and payment refused for reasons stated, good faith requires that the company shall fully apprise the insured of all of the defenses it intends to rely upon, and its failure to do so is, in legal effect, a waiver, and estops it from maintaining any defenses to an action on the policy other than those of which it

Having answered the first certified question, we proceed to consider the second certified question.

*B. Are the principles of waiver and estoppel inoperable to extend insurance coverage beyond the terms of an insurance contract except where either the insurer expressly relinquishes its right to deny coverage or the insured detrimentally relies upon the insurer's unconditional defense of an action brought against the insured?*

This question is raised because the previously unarticulated defense USF & G attempted to raise in response to C & K's motion for summary judgment involved a policy exclusion, or noncoverage issue, as opposed to a claim that C & K failed to fulfil some technical requirement for obtaining coverage, such as timely providing USF & G with notice of the claim or proof of its loss.

C & K argues that the correct response to this question is no. C & K asserts that the principles of waiver and estoppel operate to extend insurance coverage beyond the contractual language unless the insurer can show, by clear and convincing evidence, either that the insurer did not expressly relinquish its right to deny coverage for the reasons asserted in the subsequent litigation or that the insured did not detrimentally rely upon the insurer's defense of the insured's action.

USF & G responds that this Court should answer this question in the affirmative and adopt the rule announced in *Insurance Co. of North America v. National Steel Service Center, Inc.*, 391 F.Supp. 512 (N.D.W.Va. 1975): waiver and estoppel operate to extend insurance coverage only if the insurer expressly relinquishes its right to deny coverage or if the insured detrimentally relies

upon the insurer's unconditional defense of the insured's action.

The rule adopted by an overwhelming majority of jurisdictions is that the doctrines of waiver and/or estoppel may not be used to extend insurance coverage beyond the terms of an insurance contract. *See Martin v. Colonial Ins. Co. of Cal.*, 644 F.Supp. 349, 352 (D.Del.1986) ("It is well established that the coverage or scope of a policy may not be extended by waiver, implied from the insurer's reliance on exclusions in an initial rejection letter, which differ from those ultimately put forth as a defense." (citations omitted)); *Yazoo County, Miss. v. International Surplus Lines Ins. Co.*, 616 F.Supp. 153, 156 (S.D.Miss.1985) ("The law in Mississippi and the Fifth Circuit is that 'conditions going to coverage or scope of a policy of insurance, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action.'" (citation omitted)); *Home Indem. Co. v. Reed Equip. Co., Inc.*, 381 So.2d 45, 50–51 (Ala.1980) ("Although the doctrine of waiver may extend to practically every ground on which an insurer may deny liability based on forfeiture, the doctrine is not available to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom. 43 Am.Jur.2d, *Insurance*, §§ 1058 and 1184 at pp. 983 and 1102–1103. Thus, coverage under an insurance policy cannot be created or enlarged by waiver or estoppel."); *American States Ins. Co. v. McGuire*, 510 So.2d 1227, 1229 (Fla.Dist.Ct.App.1987) ("it is undisputed that, as a general principle, the doctrines of waiver and estoppel are not available to extend the coverage of an insurance policy or to create a primary liability" (citations omitted)); *Insurance Co. of N. Am. v. Coffman*, 52 Md.App. 732, 743, 451 A.2d 952, 957 (1982) (observing that defenses

has thus given notice"; and explaining further that the insurer is not estopped from asserting defenses that were unknown to it at the time benefits were denied. (quoting *Smith v. Grange Mut. Fire Ins. Co. Of Mich.*, 234 Mich. 119, 122–123, 208 N.W. 145 (1926))); *Boren v. State Farm Mut. Auto. Ins. Co.*, 225 Neb. 503, 507, 406 N.W.2d 640, 643 (1987) (stating, without explaining and without reference to doctrines of waiver or estoppel, "the controlling rule of law is that an insurer which gives one reason for its conduct

and decision as to a matter in controversy cannot, after litigation has begun, defend upon another and different ground,"); *Armstrong v. Hanover Ins. Co.*, 130 Vt. 182, 188, 289 A.2d 669, 672 (1972) (recognizing that " '[w]hen an insurer elects not to take advantage of a forfeiture, he waives it, and cannot assert it in defense, though the insured was not misled to his prejudice,' " particularly where insurer failed to indicate its intent to reserve its right to raise other grounds for denying coverage.).

founded on a lack of basic coverage "may not be waived merely by the company's failure to specify them in its initial response to the claim, for the effect of that would be to expand the policy to create a risk not intended to be undertaken by the company"); *Palumbo v. Metro. Life Ins. Co.*, 293 Mass. 35, 37–38, 199 N.E. 335, 336 (1935) ("whatever may be the scope of waiver in the law of insurance, it does not extend to the broadening of the coverage, so as to make the policy cover a risk not within its terms. That would require a new contract, and cannot be accomplished by waiver."); *D.E.M. v. Allickson*, 555 N.W.2d 596, 601 (N.D.1996) ("it is also essential that the unassigned grounds be such that they could have been remedied or obviated had the insured known that the insurer intended to rely thereon and that the insured was so far misled or lulled into security by the silence as to such grounds that to enforce them subsequently would be unfair or unjust"); *Avon Group, Inc. v. National Union Fire Ins. Co.*, 235 A.D.2d 347, 348, 653 N.Y.S.2d 115, 115 (1997) (mem.) (stating that where insurer's previously unannounced ground for declination was based upon non-coverage, the insurer's previous "disclaimer on the basis of other policy provisions [did] not create coverage where it otherwise [did] not exist"); *Estate of Hall v. HAPO Fed. Credit Union*, 73 Wash.App. 359, 363, 869 P.2d 116, 118 (1994) (recognizing majority view that "[t]he general rule is that, while an insurer may be estopped, by its conduct or its knowledge or by statute, from insisting upon a forfeiture of a policy, yet under no conditions can the coverage or restrictions on the coverage be extended by the doctrine of waiver or estoppel." (quoting *Carew, Shaw & Bernasconi v. General Cas. Co. of Am.*, 189 Wash. 329, 336, 65 P.2d 689 (1937))); *Utica Mut. Ins. Co. v. Klein & Son, Inc.*, 157 Wis.2d 552, 561, 460 N.W.2d 763, 767 (Wis. Ct.App.1990) (observing that "an insurer can-

not waive a coverage clause of either an inclusionary or exclusionary nature going to the scope of coverage assumed, ... nor can estoppel be used to enlarge coverage" (citations omitted)).[14]

The reasons for this rule have been aptly summarized by the Court of Appeals of Ohio:

> The reasons usually addressed in support of the general rule that waiver and estoppel cannot extend coverage of an insurance policy are that a court cannot create a new contract for the parties, that an insurer should not be required to pay a loss for which it charged no premium, and that a risk should not be imposed upon an insurer which it might have denied.

*Turner Liquidating Co. v. St. Paul Surplus Lines Ins.*, 93 Ohio App.3d 292, 299, 638 N.E.2d 174, 179 (1994). *See also Martin v. Colonial Ins. Co. of California*, 644 F.Supp. at 352 (recognizing that to permit waiver to extend coverage of a policy "would be to create a new contract between the parties. The doctrine of waiver cannot create coverage where none is contracted for by the parties. Waiver can only be used to continue coverage which would otherwise be lost by a technical non-compliance with a forfeiture clause.").

■ Based upon our assessment of the law with respect to this issue, we hereby expressly adopt the majority rule and hold that generally, the principles of waiver and estoppel are inoperable to extend insurance coverage beyond the terms of an insurance contract.

This is not a rule without exceptions, however. The *Turner* court continued:

> While these are valid considerations which support the general rule, we do not find them persuasive in all circumstances. An insurer should not be able to avoid liability

---

14. *But see Peoples Bank & Trust Co. v. Aetna Cas. & Sur. Co.*, 113 F.3d 629, 638 (6th Cir.1997) (interpreting Kentucky law and "assum[ing] without deciding that waiver and estoppel can work to expand the scope of coverage"); *Tate v. Charles Aguillard Ins. & Real Estate, Inc.*, 508 So.2d 1371, 1375 (La.1987) ("waiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege

to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered."); *ABCD...Vision v. Fireman's Fund Ins.*, 84 Or.App. 645, 734 P.2d 1376 (1987) (finding insurer's failure to timely assert exclusions from coverage resulted in insurer being estopped to assert them), *overruled on other grounds by ABCD...Vision v. Fireman's Fund Ins.*, 304 Or. 301, 744 P.2d 998 (1987).

under all circumstances in which it voluntarily relinquishes a known right or induces another into changing his position based upon reliance on the insurer's conduct when the insured is prejudiced by such reliance.

*Turner* at 299, 638 N.E.2d at 179.

One of the more commonly recognized exceptions to the general rule operates to prevent an insurer from asserting a previously unmentioned coverage based defense where the insurer, or its agent, made a misrepresentation at the policy's inception that resulted in the insured being prohibited from procuring the coverage s/he desired. *See Darner Motor Sales, Inc. v. Universal Underwriters Ins.,* 140 Ariz. 383, 682 P.2d 388 (1984) (recognizing rule that allows insured to raise estoppel to establish coverage contrary to the limitations in the boiler-plate terms of an insurance policy when the insurer's agent represented the coverage as greater than that actually included in the printed policy); *Turner, supra* (permitting coverage to be extended by waiver or estoppel where insurer or its agents misrepresented the extent of coverage the insured purchased); *Bill Brown Const. Co., Inc. v. Glens Falls Ins. Co.,* 818 S.W.2d 1 (Tenn. 1991) ("the long-standing rule in Tennessee [is] that *any* contractual provision of a policy of insurance, whether part of an insuring, exclusionary, or forfeiture clause, may be waived by the acts, representations, or knowledge of the insurer's agent. Of course, the burden of proof ... falls upon the insured to prove that a misrepresentation was made and that the insured reasonably relied upon that misrepresentation."); *Harr v. Allstate Ins. Co.,* 54 N.J. 287, 255 A.2d 208 (1969) (finding equitable estoppel is available to broaden coverage when there is a misrepresentation before or at the inception of the insurance contract, even where the misrepresentation is innocent); *Hunter v. Farmers Ins. Group,* 554 P.2d 1239, 1243 (Wyo.1976) (recognizing that "[t]here are

some circumstances, if present, where the plaintiff could rely upon an agent's representations even as against a contrary provision in the insurance policy, based upon not only principles of agency but considerations of equitable estoppel." (citations omitted)).

A second commonly recognized exception applies when an insurer has represented the insured without a reservation of rights. This exception has previously been applied by this Court. In Syllabus point 2 of *National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987), we held that "[a]n insurer's knowledgeable, unconditional conduct of the defense of an action brought against its insured may constitute a waiver of the terms of the policy and an estoppel of the insurer to assert any such grounds."[15] We explained further that:

> While the party asserting waiver or estoppel has the burden of proving it, [ ] we will presume prejudice resulted where an insured has shown that his insurer assumed the defense of an action.... The insurer may, of course, rebut this presumption by presenting evidence to show that no prejudice actually resulted and that the insured did not relinquish his right to conduct his defense.

*Id.* at 739, 356 S.E.2d at 493 (internal citations omitted).

Similarly, the Court of Appeals of Ohio found that the trial court erred in granting summary judgment to an insurer where it was alleged that the insurer "provided a defense for nearly one year without a reservation of rights." *Turner* at 300, 638 N.E.2d at 179. The *Turner* court observed that:

> As a result of [the insurer's] providing a defense for this period, [the insured] alleges it relied on this defense and did not conduct an investigation of the claim, provide its own defense, or attempt to settle the claim. Allegedly, these actions prejudiced [the insured]. Providing a defense for nearly one year without reserving its

---

**15.** To the extent that Syllabus point 2 of *National Mut. Ins. Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987) suggests that prejudice to the insured resulting from the insurer's conduct is a required element of *waiver,* it is rejected and modified by our holding in Syllabus point 3 of this opinion. To the extent that Syllabus point 2 of *McMahon* indicates that *waiver* may be applied to extend insurance coverage beyond the terms of the policy, it is rejected and modified by our holding in Syllabus point 6 of this opinion.

rights may give rise to a claim of estoppel preventing [the insurer] from raising the lack of coverage in this case.

*Id.* at 300, 638 N.E.2d at 179–80.

The United States Court of Appeals, interpreting Texas law, has also applied this exception. *Pacific Indem. Co. v. Acel Delivery Serv., Inc.,* 485 F.2d 1169 (5th Cir.1973). The Texas rule states: "[i]f an insurer assumes the insured's defense without obtaining a non-waiver agreement or a reservation of rights and with knowledge of the facts indicating noncoverage, all policy defenses, including those of noncoverage, are waived, or the insurer may be estopped from raising them." *Id.* at 1173 (citations omitted). The court concluded that the insurer was estopped to assert a noncoverage defense where it had represented the insured for one-and-a-half years without obtaining an effective non-waiver agreement or a reservation of rights and withdrew its representation only a few weeks prior to trial. *Id.* at 1176. *See also Insurance Co. of North America v. National Steel Service Center, Inc.,* 391 F.Supp. 512, 517–19 (N.D.W.Va.1975) (concluding that insurer who provided unconditional defense to insured for approximately four years was estopped to deny that coverage existed under insurance policy); *Gibraltar Insurance Co. v. Varkalis,* 46 Ill.2d 481, 263 N.E.2d 823 (1970) (finding that insured's reliance on the insurer's unqualified defense for over a year estopped insurer from asserting subsequent coverage based defense).

A third recognized exception applies when the insurer has acted in bad faith. *See Estate of Hall v. HAPO Fed. Credit Union,* 73 Wash.App. 359, 364, 869 P.2d 116, 119 (1994) (recognizing bad faith exception to general rule but finding no evidence of bad faith). In *Safeco Insurance v. Butler,* 118 Wash.2d 383, 823 P.2d 499 (1992), the Supreme Court of Washington explained the rationale for the bad faith exception to the general rule, in part, by recognizing other instances where its courts had found that estoppel was an appropriate remedy for an insurer's bad faith. Specifically, the *Safeco* court observed that an insurer who in bad faith refuses to settle a claim within the policy limits may be

held liable for the excess judgment. *Id.* at 393, 823 P.2d. at 505.

West Virginia has applied the same bad faith settlement rule. Thus, West Virginia has set a precedent for requiring an insurer to pay an amount over the policy limits when the insurer acts in bad faith. *See* Syl. pt. 7, *Marshall v. Saseen,* 192 W.Va. 94, 450 S.E.2d 791 (1994) ("Where an uninsured or underinsured motorist insurance carrier fails to settle within its policy limits, it may be liable in a separate suit for the excess verdict returned by a jury for its failure to make a good faith settlement within its policy limits under the principles set out in *Shamblin v. Nationwide Mutual Insurance Co.,* 183 W.Va. 585, 396 S.E.2d 766 (1990)"). *See also* Syl. pt. 5, in part, *Dodrill v. Nationwide Mut. Ins. Co.,* 201 W.Va. 1, 491 S.E.2d 1 (1996) (" 'Punitive damages may be awarded to an insured if the insurer actually knew that the claim was proper and the insured can prove that it was willfully, maliciously and intentionally denied.' "); Syl. pt. 4, *Buckhannon–Upshur County Airport v. R & R Coal Contracting Inc.,* 186 W.Va. 583, 413 S.E.2d 404 (1991) (implying that prejudgment interest in excess of policy limits may be assessed against insurer who acted in bad faith, by holding "[a]bsent a bad faith claim against the insurer, prejudgment interest in excess of stated policy limits may not be assessed against the insurer without a policy provision providing therefor.").

■ Courts applying the three exceptions discussed above frequently refer to them in the context of implied waiver and estoppel. However, an examination of these exceptions reveals that they require some form of prejudice to the insured. In other words, since prejudice is not a requirement of implied waiver, these exceptions all sound in estoppel. Based upon this observation, we are persuaded by the rule adopted by the courts of the State of New York. In *Albert J. Schiff Assocs., Inc. v. Flack,* the New York Supreme Court, Appellate Division, opined that insurance could not be created by implied waiver. 73 A.D.2d 329, 333, 425 N.Y.S.2d 612, 615 (1980). Following this rule, we hold that while implied waiver may be employed to prohibit an insurer, who has previously

denied coverage on specific ground(s), from subsequently asserting a technical ground for declination of coverage,[16] implied waiver may not be utilized to prohibit the insurer's subsequent denial based on the nonexistence of coverage.

■ We further hold that exceptions to the general rule that the doctrine of estoppel may not be used to extend insurance coverage beyond the terms of an insurance contract, include, but are not necessarily limited to, cases where an insured has been prejudiced because: (1) an insurer's, or its agent's, misrepresentation made at the policy's inception resulted in the insured being prohibited from procuring the coverage s/he desired; (2) an insurer has represented the insured without a reservation of rights; and (3) the insurer has acted in bad faith.

### IV.

### CONCLUSION

For the reasons explained in the body of this opinion, we conclude that, in order to establish that an insurer has impliedly waived its right to assert a previously unarticulated reason for denying coverage, the insured must show that the insurer intentionally relinquished a known right. Alternately, in order apply the doctrine of estoppel, the insured must prove that s/he relied to her/his detriment on the initially stated ground for denial. We further hold that the doctrine of waiver may not be applied to extend insurance coverage beyond that contracted for by the parties; however, under the appropriate circumstance, the doctrine of estoppel may be so applied.

Certified Questions Answered.

MAYNARD, J., dissents.

WORKMAN, J., disqualified.

---

**16.** We use the term "technical ground" to indicate a ground that does not involve a coverage issue, such as the insured's failure to timely submit to the insurer a proof of loss form.